# Wong v. Lehigh Valley Technologies Inc.

*Craig A. Sopin,* for plaintiff.
*Larry J. Rappoport,* for defendant.

BLACK, *P.J.,* March 5, 2007—

## DECISION

Now, March 5, 2007, after trial without jury, based on the findings of fact and conclusions of law set forth below, the court finds as follows: (1) Judgment shall be entered in favor of plaintiff Dr. Allan Wong against defendant Lehigh Valley Technologies Inc. in the amount of $12,000 on Count I of plaintiff's complaint; (2) Judgment shall be entered against plaintiff in favor of defendant on Counts II, III, and IV of the complaint; and (3) Judgment shall be entered in favor of plaintiff against defendant on defendant's counterclaim.

## FINDINGS OF FACT

(1) Lehigh Valley Technologies Inc. (LVT) is a manufacturer of generic pharmaceutical products with its principal place of business at 514 North 12th Street, Allentown, Lehigh County, Pennsylvania.

(2) By letter dated July 14, 2005, LVT, through its chief executive officer, Jeffrey Moshal, extended a written offer of employment to Dr. Allan Wong for the position of Director of Analytical Services, effective August 15, 2005, at a base salary of $85,000 plus vacation and other benefits.

(3) Wong accepted this offer and began to work for LVT as its director of Analytical Services on August 15, 2005.

(4) LVT's letter of July 14, 2005, set forth a bonus arrangement pursuant to which Wong was eligible to receive up to $78,000 in bonuses, in addition to his salary. For nine products identified as "Grandfathered products," Wong was to receive a bonus of $2,000 each upon the marketing of the product by a certain date. For 12 other products identified as "ANDA products," Wong was to receive a bonus of $2,000 each upon the filing of an application for the federal Food and Drug Administration (FDA) approval of the product by a certain date and an additional $3,000 upon obtaining FDA approval. LVT's letter further provided: "In the event that any of these dates are missed the bonus for the particular product shall be reduced by 20 percent."

(5) In accepting LVT's offer of employment, Wong turned down an employment offer at a higher base salary from another company. The opportunity to earn the bonuses was a material inducement for Wong to accept LVT's offer of employment.

(6) In order to accept LVT's offer of employment, Wong had to relocate from New Jersey to the Lehigh Valley area.

(7) LVT did not make any fraudulent misrepresentations to Wong to induce him to enter into its employment. However, an implied term of the letter agreement that LVT drafted was that Wong would be given a reasonable opportunity to work on the products on the bonus list so that these products could be brought to market by the bonus deadlines in the letter.

(8) As director of Analytical Services, Wong was to oversee and manage the entire LVT lab. His duties were not limited to the particular products for which he was

eligible to receive bonuses. He was also to complete work on other products under development that were not on his bonus list.

(9) The letter agreement did not specify the term of employment. Nor did it purport to limit the ability of Wong or LVT to terminate the agreement at any time with or without cause.

(10) Wong made a significant error in his work on the codeine sulphate tablets.

(11) On December 5, 2005, following the discovery of Wong's error, LVT, through Moshal, expressed its dissatisfaction with Wong's job performance and terminated his employment, effective immediately. LVT confirmed the termination by a letter of that date.

(12) As a result of Wong's error, much of his research had to be repeated by others after his termination, a fact that caused additional expense and delay in bringing the codeine sulphate products to market.

(13) In November 2005, a month prior to Wong's termination, five products that had been completed under Wong's direction were marketed by LVT. These products included two estrogen products and three mephobarbital products. None of these products was on the bonus list in the letter agreement, and LVT has declined Wong's request for a bonus of $2,000 on each of these five products.

(14) LVT did not secure the rights to develop the two codeine sulphate tablets or the three morphine sulphate tablets on the bonus list until October 2005, and the two oxycodone products required a new FDA approval that was not obtained during Wong's employment.

(15) When Wong began his employment with LVT on August 15, 2005, he was instructed to prioritize completion of development of the estrogen and mephobarbital products that were not on his bonus list, and he did so.

(16) As a result, Wong was unable to begin work on any of the products on his bonus list until October 2005, and none of the products on the bonus list had gone "to market" by the time of his discharge on December 5, 2005.

(17) LVT did not give Wong a reasonable opportunity to complete work on any of the products on the bonus list by the deadlines in the letter agreement.

(18) The two codeine sulfate tablets were not brought to market until June 2006, seven months after the November 2005 "date to market" in the letter agreement.

(19) The three morphine sulfate tablets were not brought to market until August 2006, eight months after the December 2005 "date to market" in the letter agreement.

(20) Wong did substantial work on both the codeine and the morphine products prior to his termination. However, because of the error in his work on the codeine sulfate tablets, his work on these products was of limited value.

(21) At the time Wong was terminated, he was directed to pack his personal belongings and leave the premises. He was not authorized to take with him any property belonging to LVT.

(22) Wong maintained some of his work product at LVT on floppy discs.

(23) Upon termination, Wong took with him certain floppy discs that contained some of his work product.

(24) It is not clear what work product was on these floppy discs or what value these floppy discs had to LVT. LVT has offered no evidence as to the fair market value of the floppy discs. It remains unclear what exactly was on these discs and what value, if any, this information had.

(25) Although LVT claims that it incurred penalties for delay in bringing the codeine sulphate products to market, no documentary evidence has been produced regarding these penalties. It remains unclear how these penalties were calculated and how much of the penalty, if any, is attributable to the removal of the floppy discs.

(26) Although LVT seeks reimbursement for charges by a third party for examining the hard drive of the computer used by Wong, no documentary evidence has been produced of any such charges and no evidence has been produced to establish that any such charges were fair and reasonable.

(27) Since the work done by Wong was inadequate, leading to his discharge, it remains unclear how much, if any, of the 200 hours allegedly spent by William Reighter to recreate documents on the floppy discs was caused by the removal of the discs as opposed to deficiencies in Wong's work.

## CONCLUSIONS OF LAW

### I. *Breach of Contract*

(28) The contract of employment between LVT and Wong was terminable at will by either party, with or without cause.

(29) An implied term of the employment contract was that Wong would be given an opportunity to work on and

bring to completion the bonus-eligible products by the deadlines set forth in the contract.

(30) Since LVT did not have the right to develop certain of these products at the commencement of Wong's employment and instead directed him to prioritize the development of other products not on the bonus list, LVT deprived Wong of the opportunity to bring to completion any of the bonus-eligible products by the time his employment was terminated.

(31) As a result, LVT breached the employment agreement.

(32) Wong is entitled to damages for this contract breach in the amount of $12,000, representing the bonuses of $2,000 each for the six products, other than codeine sulphate tablets, that were to be marketed by December 2005. These products include the three morphine sulphate tablets, the two oxycodone tablets, and one of the USEPT tablets.

(33) Wong is not entitled to a bonus on the codeine sulfate tablets even though he did considerable work on these products because his work contained a serious error that required it to be replicated after his departure from LVT.

(34) Wong is not entitled to any further damages on his breach of contract claim.

(35) Wong is entitled to a judgment against LVT on Count I in the amount of $12,000.

II. *Detrimental Reliance/Misrepresentation and Deceit*

(36) Fraud must be proved by clear and convincing evidence. *Goldstein v. Phillip Morris Inc.,* 854 A.2d 585, 590 (Pa. Super. 2004).

(37) Wong has not produced clear and convincing evidence that LVT made any intentional misrepresentations in order to induce him to enter into the employment contract.

(38) LVT is entitled to a judgment against Wong on Count II of the complaint.

### III. *Unjust Enrichment*

(39) Where a contract of employment exists between the parties, a claim of unjust enrichment by the employee does not lie for services provided under the contract. The employee's right to compensation for such services is governed by the contract. *Diener Brick Company v. Mastro Masonry Contractor,* 885 A.2d 1034, 1039 (Pa. Super. 2005).

(40) LVT is entitled to a judgment against Wong on Count III of the complaint.

### IV. *Intentional Infliction of Mental Distress*

(41) The plaintiff has failed to prove extreme and outrageous conduct that caused Wong severe emotional distress.

(42) LVT is entitled to a judgment against Wong on Count IV of the complaint.

### V. *Defendant's Counterclaim for Conversion*

(43) Damages are never presumed in a tort action. They must be proved with reasonable certainty. *Company Image Knitware Ltd. v. Mothers Work Inc.,* 909 A.2d 324, 336 (Pa. Super. 2006).

(44) LVT has not pleaded or satisfactorily proved any damages from Wong's removal of the floppy discs.

(45) Wong is entitled to a judgment against LVT on LVT's counterclaim.