J-A04004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROGER GLOVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THE CHILDREN'S HOSPITAL OF | : | No. 778 EDA 2021 |
| PHILADELPHIA | : | |

Appeal from the Order Entered March 17, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  November Term, 2018 03016

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 13, 2022**

Roger Glover appeals from the order, entered in the Court of Common Pleas of Philadelphia, entering judgment, following a non-jury trial, in favor of Appellee, The Children's Hospital of Philadelphia (CHOP), and dismissing Glover's claims against CHOP with prejudice.  After our review, we find Glover has waived his claims on appeal, and, therefore, affirm.

In March 1992, CHOP hired Glover to be a food service worker in its Food and Nutrition/Catering Department.  As part of his job, Glover lifted, pushed, and pulled tables and chairs weighing up to 80 pounds.  On December 18, 2015,[1] Glover alleged that he felt a jerk and tear in his left shoulder during

---

[1] The trial court's findings of fact state the date of Glover's work injury as "December 18, 2016 (a Friday)."  **See** Findings of Fact, 3/22/21, at ¶¶ 8-9.  The correct date is December 18, **2015**.  Earlier that same day, Glover had a

*(Footnote Continued Next Page)*

his work shift. Glover did not report the injury to any CHOP supervisor, but he noted the injury in his daily log at the conclusion of his shift.

Glover's immediate supervisor, Dana Spatz, read Glover's shift notes the following Monday, December 21, 2015, and told Glover to report to CHOP's Occupational Health Department to have his shoulder examined. CHOP's occupational health physician cleared Glover to return to work without any medical restrictions. Despite being cleared to work, Glover alleged he "continued to suffer significant pain in his left shoulder and complained about it to his coworkers and supervisors." Plaintiff's Complaint, 11/28/18, at ¶ 24. Glover was unable to perform all of his previous job functions after December 21, 2015.

In January 2016, CHOP sent Glover to be examined by an occupational medicine physician, who placed Glover on medical restrictions and prescribed Naproxen to treat Glover's shoulder pain. On January 26, 2016, CHOP's Workers' Compensation Manager, Anita Miceli, sent Glover a letter notifying him that he had been assigned to a light-duty, temporary (maximum 90 days, ending April 26, 2016) position in the Radiation/Sedation/Vascular Access Department, to begin the next day, which was designed to transition to full-duty work. The letter also notified Glover that his next doctor's appointment

_____

meeting with his supervisor, a Union representative and a witness, during which he received an oral warning regarding his job performance—the first warning he had received during his employment. *Id.* at 8; Exhibit D-32.

was February 5, 2016. At that follow-up visit, Glover was directed to go to a physical therapy evaluation on February 9, 2016.

On February 27, 2016, Glover went to the emergency department at Aria Health complaining of shoulder pain. He was given a three-day prescription for Vicodin. Glover did not immediately report that visit or the narcotic prescription to CHOP. Glover was diagnosed with a torn rotator cuff and labrum in his left shoulder. Subsequently, Glover filed a workers' compensation claim due to his work-sustained injury.

At an April 12, 2016 follow-up appointment at Aria Health, Glover was prescribed a one-month supply of Percocet to take on an "as-needed" basis. Glover provided CHOP's Occupational Health Department with a note explaining that he had been prescribed Percocet for his shoulder injury and pain. Shortly thereafter, CHOP notified Glover that he was not permitted to work while taking the medication.

Glover left employment on April 15, 2016, and he sought and obtained workers compensation benefits, retroactive to April 16, 2016. CHOP's short-term disability administrator contacted Glover on six occasions, advising him to contact human resources if he needed a reasonable accommodation. Glover did not do so, and a short-term disability claim was disapproved because Glover failed to contact the administrator and failed to provide information to process the claim.

In November, 2016, CHOP's Senior Human Resource Business Partner, Darryl Benjamin, became aware that Glover had exceeded any form of

- 3 -

authorized leave and had not submitted verifications needed to obtain a protected leave. On November 28, 2016, CHOP notified Glover that his employment was terminated.

On November 28, 2018, Glover filed[2] a complaint in common pleas court under the Pennsylvania Human Relations Act (PHRA)[3] alleging claims of disability discrimination (Count I), retaliation (Count II), and wrongful termination (Count III). Glover contended that CHOP failed to "accommodate his request for a reasonable accommodation in the form of light duty and the ability to take prescription medication for pain, and also retaliated against him due to this request for a reasonable accommodation and that he was terminated in retaliation for his filing of a Worker's Compensation Claim." Plaintiff's Complaint, 11/28/18, at ¶ 46.

---

[2] In his state court complaint, Glover alleged that he exhausted his administrative remedies under the Americans with Disabilities Act and the PHRA and timely dual-filed a discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC). Glover's EEOC complaint was dismissed, and he was given a right-to-sue notice dated October 2, 2017. The EEOC found that Glover failed to respond, multiple times, to CHOP's third-party claims administrator's request for additional information necessary to process his short-term disability and Family and Medical Leave Act (FMLA) claims. The FMLA entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave. See https://www.dol.gov/agencies/whd/fmla (last visited 6/7/22). As a result, the EEOC determined that there was insufficient evidence to establish Glover's retaliation claim and, thus, refused to issue a complaint in the matter. **See** NLRB Letter, 4/25/17. Glover subsequently notified the EEOC of his intent to proceed with a lawsuit in state court.

[3] **See** 43 P.S. § 951, *et seq*.

On February 7, 2020, CHOP moved for summary judgment. Glover filed an answer to the motion. On March 12, 2020, the court denied CHOP's summary judgment motion. Subsequently, CHOP filed a motion to strike Glover's jury demand. On June 26, 2020, the court dismissed Count III of Glover's complaint (wrongful termination), with prejudice, struck Glover's demand for a jury trial, and transferred the case to the non-jury program. Order, 6/26/20.

On February 28, 2021, the court held a remote bench trial, via Zoom. At trial, Glover testified on his own behalf and three witnesses testified for CHOP. At the conclusion of the proceedings, CHOP's attorney moved for a compulsory nonsuit, which the trial court denied. N.T. Non-Jury Trial, 2/28/21, at 191. The court then "recognize[d] that [it] ha[d]n't reached a verdict yet," *id.* and that it would "review the pleadings of the parties" before making a final decision. *Id.*

On March 22, 2021, the court reached a verdict, entered judgment in favor of CHOP, and dismissed Glover's complaint with prejudice. The court determined that Glover failed to exhaust his administrative remedies as they pertained to his failure to accommodate.[4] Neither party filed post-trial motions.

---

[4] The court also recognized that, even if Glover had exhausted his administrative remedies, he never requested an accommodation.

On April 8, 2021, Glover filed a timely notice of appeal. Glover presents the following issues for our consideration:

(1) Did the [t]rial [c]ourt err and abuse its discretion in allowing admission over [Glover's] objection of Ms. Louise Aurisch's prior testimony from a Workers' Compensation [deposition] as [the court] made no finding that she was unavailable to testify pursuant to the Pennsylvania Rules of Evidence and it was otherwise inadmissible hearsay?

(2) Did the [t]rial [c]our err in ruling that [Glover] never requested an accommodation in Paragraph 13 of its Conclusions of Law as the note submitted by [Glover] constituted an accommodation request under the law?

(3) Did the [t]rial [c]ourt err when it made a finding of fact at Paragraph 94 of its Findings of Fact when it found that [Glover] did not exhaust available administrative remedies pertaining to his failure to accommodate cause of action.

Appellant's Brief, at [8].

Prior to reviewing the merits of Glover's claims, we must determine whether he has preserved them for appeal. It is well-settled that the filing of post-trial motions is mandatory if a litigant wishes to preserve issues for appellate review. Specifically, Pa R.C.P. 227.1 requires parties to file post-trial motions within ten days of the verdict or decision in order to preserve issues for appeal. *See* Pa.R.C.P. 227.1(c) ("Post-trial motions shall be filed within ten days after (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or (2) notice of nonsuit *or the filing of the decision in the case of a trial without jury*.") (emphasis added). If an issue has not been raised in a post-trial motion, it is waived for appeal purposes. *See Sahutsky v. H.H. Knoebel Sons*, 782 A.2d 996 (Pa. 2001);

- 6 -

*D.L. Forrey & Associates, Inc. v. Fuel City Truck Stop, Inc.*, 71 A.3d 915 (Pa. Super. 2013); *Warfield v. Shermer*, 910 A.2d 734 (Pa. Super. 2006); *Sovereign Bank v. Valentino*, 914 A.2d 415 (Pa. Super. 2006); *Diener Brick Co. v. Mastro Masonry Contractor*, 885 A.2d 1034 (Pa. Super. 2005); *Lenhart v. Cigna Companies*, 824 A.2d 1193 (Pa. Super. 2003).

Here, the trial court labeled its decision "final order." That, however, is of no moment. "Our Court has consistently refused to entertain appeals from orders or verdicts following nonjury trials in actions at law when no post-trial motions have been filed." *Lenhart*, *supra* at 1196–97. *See also Lane Enterprises, Inc. v. L.B. Foster Co*., 710 A.2d 54, 54 (Pa. 1998) (stating "Pa.R.Civ.P. 227.1 requires parties to file post-trial motions in order to preserve issues for appeal[,]" and reversing this Court's order that reviewed appellant's issues where appellant did not file post-trial motions, but instead, assuming trial court's opinion was final order, filed notice of appeal); *Krystal Development Corp. v. Rose*, 704 A.2d 1102, 1103 (Pa. Super. 1997) (if no post-trial motions filed after nonjury trial, no issues preserved for appellate review).

In *Lenhart*, *supra*, appellant argued it was confused by the trial court's use of the words "Judgement" in its memorandum and "verdict" in the entry of its decision. 824 A.2d at 1196-97. This Court rejected that argument, stating:

> [Appellant] was on notice, at the time of the decision of the trial court after the non-jury trial, that regardless of what terms were used by the trial court in its decision, it was required to file post-

trial motions in order to preserve any issues for appellate review. In **Shonberger v. Oswell**, [] 530 A.2d 112 ([Pa. Super.] 1987), the trial judge labeled its findings "judgment." The judgment was premature and void. **Id.** at 113, n. 1. The appeal period did not begin to run until the denial of the post-trial motions and the subsequent entry of a judgment. **Id.** [Appellant] stated that it believed that it was required to file an immediate appeal to the trial court's September 21, 2001, "verdict" in favor of Lenhart. We, however, find that the trial court's order in the case *sub judice* amounted to a verdict or decision, not a final judgment. Thus, the proper procedure was for [Appellant] to file post-trial motions following the trial court's decision. In light of **Shonberger** (1987) and **Lane** (1998), which were on the books for fourteen and three years, respectively, before the trial court issued its decision in this non-jury trial, there is no excuse for [Appellant's] failure to file post-trial motions as required by our procedural rules.

**Lenhart**, 824 A.2d at 1197.

Here, like in **Lenhart**, the trial court's order in favor of CHOP and against Glover amounted to a verdict or decision, not a "final order," and, therefore, "the proper procedure was for [Glover] to file post-trial motions following the trial court's decision." **Lenhart**, **supra** at 1197, citing Pa.R.C.P. 227.1. Appellant was on notice at the time of the trial court's decision after the non-jury trial that "regardless of what terms were used by the trial court in its decision, it was required to file post[-]trial motions in order to preserve any issues for appellate review." **D.L. Forrey & Associates, Inc.**, **supra** at 921. This Court cannot overlook the failure to comply with Rule 227.1.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 7/13/2022*