**Volutza v. McBryan**

488

*Shanin Specter, Andrew S. Youman, Charles L. Becker* and *Garabet M. Zakeosian,* for plaintiffs.

*Barbara S. Magen, Sheila A. Haren* and *Michael M. Badowski,* for defendants McBryan Jr., and Berks Internal Medicine Ltd.

*Kevin H. Wright* and *Terrence M. Pitt,* for defendants Hey Jr. and Cardiology Associates of West Reading Ltd.

*James P. Kilcoyne,* for defendants Winn and West Reading Radiology Associates.

*Edwin L. Stock,* for defendant The Reading Hospital and Medical Center.

SCHMEHL, J.L., *P.J.,* June 3, 2010—Donald J. McBryan Jr. MD, and Berks Internal Medicine Ltd., de-

fendants/appellants in the above-captioned matter, appeal from the jury verdict of February 9, 2009.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This medical malpractice action was initiated following the January 24, 2003 death of Gregory Volutza (decedent). A later autopsy showed the cause of death to have been a myocardial infarction (heart attack). The events which occurred during the week of Monday, January 20, 2003 largely form the basis for this action.

The following is a brief summary of largely undisputed facts of the events of that week. On the morning of Monday, January 20, 2003, the decedent was suffering from chest pain and chest tightness, jaw pain, shakiness, anxiety and lightheadedness. The decedent went to see defendant Donald J. McBryan Jr. M.D., of defendant Berks Internal Medicine Ltd., for an evaluation of the symptoms. Defendant McBryan is a physician, and at the time worked as a primary care physician at Berks Internal Medicine.

During the medical exam and visit, the decedent told defendant McBryan that he had taken the anti-anxiety medication Ativan that morning, and that it had seemed to alleviate his symptoms. Decedent, it should be noted, was a pharmacist by occupation. Defendant McBryan reviewed the decedent's medical history, taken at decedent's initial visit with defendant McBryan a month prior. The history showed that the decedent was 37 years of age and overweight. He had high cholesterol and blood pressure for both of which he took medication. Addition-

ally he had some family history of heart conditions which required surgery.

During the same visit, defendant McBryan's office conducted an electrocardiogram on the decedent. Defendant McBryan determined that decedent had not experienced cardiac-related problems, and that instead the symptoms likely stemmed from a panic attack. Defendant McBryan told the decedent to go to the emergency room if his symptoms returned, and scheduled the decedent to undergo a Cardiolyte stress test the following day.

The next morning, on Tuesday, January 21, 2003, the decedent underwent the stress test, conducted by defendant E. Berry Hey Jr. M.D., a cardiologist at the facility of defendant Cardiology Associates of West Reading Ltd. The immediate test results of the stress test were considered to be within normal range, and the decedent left the appointment following the test. Later that day, defendant Randall S. Winn M.D., a radiologist with defendant West Reading Radiology Associates, reviewed the images from the stress test and found that they showed some abnormalities, including a minor heart defect. Defendant Winn then mailed the results to defendant McBryan, as was the protocol at the time. Defendant McBryan received the stress test results on Thursday, January 23, 2003.

Three days after the stress test, while at work the morning of Friday, January 24, 2003, the decedent re-experienced the same symptoms he had experienced on Monday. He telephoned defendant McBryan's office and left a voice message to inform the office of the recurrence of the symptoms. Upon receiving a written note containing the message, defendant McBryan then reviewed the

imaging portion of the stress test results, which had just arrived that day. Defendant McBryan then called the decedent's workplace, whereupon he learned that the decedent was at that moment undergoing urgent care by emergency workers for an apparent heart attack. Defendant McBryan called the defendant Reading Hospital and Medical Center to speak with the cardiologist on call, then left to meet the ambulance at the hospital. The decedent passed away shortly thereafter that same morning.

The third amended complaint, filed March 30, 2004, listed counts in negligence against each defendant, including the defendant Hospital, as well as causes of action of wrongful death under the Survival Act.

This court held a jury trial from January 26, 2009 through February 9, 2009. The verdict was returned after the two-week trial in favor of plaintiff and against defendants McBryan and Berks Internal Medicine, in the amount of $4,000,000. A verdict also came back in favor of the remaining defendants.[1]

On February 18, 2009, plaintiff filed motions for post-trial relief, as well as a motion for delay damages. Defendants McBryan and Berks Internal Medicine also filed motions for post-trial relief on February 18, 2009, with five reasons listed therein. On May 7, 2009, this court held argument on all post-trial motions, and after consideration of same and review of the record, entered an order which denied all post-trial motions, and granted

---

1. The court had previously granted a nonsuit and directed verdict in favor of defendant Hospital on direct liability, excluding agency grounds.

plaintiff's motion for delay damages, pursuant to Pa.R.C.P. 238.

Defendants McBryan and Berks Internal Medicine filed notice of the present appeal January 7, 2010. Moving defendants thereafter filed a timely concise statement of errors complained of on appeal.

## II. DISCUSSION

Defendants McBryan and Berks Internal Medicine raise the following lengthy "Concise statement of errors complained of on appeal":

(1) This court erred and abused its discretion in denying defendants' motions for partial nonsuit and for partial directed verdict due to the fact that Dr. McBryan, as the referring physician, had no duty to call for, or otherwise access, ordered test results. Defendants are entitled to either the entry of judgment n.o.v. or, in the alternative, a complete new trial as to all defendants on this basis.

(2) The instant defendants are entitled to a complete new trial as to all defendants, since the jury's verdict was against the overwhelming weight of the evidence.

(3) This court erred and abused its discretion in failing to grant a new trial, since the jury's verdict rendered solely against Dr. McBryan, with no liability being attached to the co-defendants, Dr. Hey and Dr. Winn, represents an inconsistent and irreconcilable verdict which was contrary to the evidence presented, thereby entitling Dr. McBryan to a complete new trial as to all defendants.

(4) This court erred and abused its discretion in repeatedly refusing to instruct the jury that Dr. McBryan, as the

referring physician, had no duty to call for, or otherwise access, the results of Dr. Winn or Dr. Hey's tests. By refusing to instruct the jury that Dr. McBryan, as the referring physician, had no duty to call for, or otherwise access, the results of Dr. Winn or Dr. Hey's tests, the court allowed the jurors to base a finding of negligence upon a theory of liability which was not supported by the requisite expert testimony.

In this regard, plaintiff's expert witness offered no criticism of Dr. McBryan for not calling Dr. Winn and Dr. Hey in advance of receiving their reports concerning Mr. Volutza. Despite this, plaintiff improperly elicited testimony from Mrs. Volutza that Dr. McBryan advised her, after Mr. Volutza's death, that he may have been able to access the reports from the Hospital's computer system. Without the appropriate instruction, the jury was improperly permitted to infer negligence, on the part of Dr. McBryan, based upon the testimony of a non-expert witness. Defendants were unduly prejudiced by the court's error and abuse of discretion, since one cannot be certain whether the jury's verdict was based upon its finding that Dr. McBryan should have taken proactive steps to obtain the test results of Dr. Winn and Dr. Hey. As such, a complete new trial must be granted as to all defendants.

(5) This court erred and abused its discretion in refusing to grant a new trial based on the court's failure to instruct the jury on Dr. McBryan's submitted point for charge no. 8.[2] By failing to instruct the jury on Dr. McBryan's submit-

---

2. Defendants' point for charge no. 8 reads as follows:

"The practice of medicine involves professional skill and training and the application of techniques which are generally beyond the

ted point for charge no. 8, the court improperly allowed the jurors to substitute their own opinions, as non-physicians, for those of the expert witnesses and to decide the standard of care issue based on their own lay opinions as to Dr. McBryan's care and treatment. Defendants were unduly prejudiced by the court's error and abuse of discretion, since one cannot be certain whether the jury's verdict was based upon its finding that Dr. McBryan should have taken proactive steps to obtain the test results of Dr. Winn and Dr. Hey. As such, a complete new trial as to all defendants must be granted.

(6) During the argument held on Dr. McBryan's post-trial motions, counsel for Dr. Hey, plaintiff's counsel and the court, in an effort to try and reconcile the jury's verdict, commented that the jury "could have" found Dr. McBryan solely liable based upon the events which occurred on Friday, January 24, 2003. In point of recorded fact, this further demonstrates Dr. McBryan's entitlement to a new trial. Dr. Machac, plaintiff's only liability expert, confined his standard of care deviation opinions, as against Dr. McBryan, exclusively to the events which occurred on Monday, January 20, 2003. Dr. Machac offered no testimony whatsoever that Dr. McBryan negligently deviated

---

knowledge of individuals who are not physicians. Therefore, in evaluating the conduct of defendants in this case, you are cautioned that you must not substitute your own thinking as non-physicians as to what would be proper treatment under these circumstances, but you must be guided by the testimony of the physicians and experts you have heard testify as to the standard or standards of care applicable under these circumstances and as to whether defendants, in this instance of this case, fell below an acceptable standard of care. *Chandler v. Cook,* 438 Pa. 447, 265 A.2d 794 (1970); *Lambert v. Soltis,* 422 Pa. 304, 221 A.2d 173 (1966)."

from any standard of care with regard to the events which occurred on Tuesday, January 21, 2003, Wednesday, January 22, 2003, Thursday, January 23, 2003, and/or Friday, January 24, 2003. Hence, the parties' and the court's recognition that this jury's verdict could very well have been, and most likely was, the product of matters beyond the confines of the care and treatment rendered by Dr. McBryan on Monday, January 20, 2003, demonstrates that the jury either disregarded the court's instructions and/or that the court failed to properly instruct the jury. It is the latter which occurred here, and Dr. McBryan is entitled to a complete new trial, as to all defendants, on this basis.

(7) The practice of medicine involves professional skill and training and the application of techniques which are generally beyond the knowledge of individuals who are not physicians. Therefore, in evaluating the conduct of individual defendant physicians, it is the duty of the trial court to caution jurors that they must not substitute their own thinking, as non-physicians, as to what would be proper treatment under the circumstances presenting to each individual physician defendant. Jurors should be instructed that in considering whether (or not) a doctor negligently departed from applicable standards of care they must be guided by the testimony of the physicians and experts as to the standard (or standards) of care applicable to the facts surrounding an individual physician's professional involvement in the case. This fundamental point of law was presented to the court as a proposed jury instruction (no. 8) by Dr. McBryan, and this court erred and abused its discretion in failing to provide this instruction to the jurors. Therefore, the instant defendants are entitled to a complete new trial on this basis.

(8) The court also erred and abused its discretion in the entirety of the court's jury instructions as given. The given instructions failed to offer the legally required guidance reflected in Dr. McBryan's submitted proposed point for charge no. 8. Thus, the jury was free to speculate, as well as to decide this case on matters beyond that of the legally supported evidentiary criticisms of Dr. McBryan. Again, Dr. Machac's expert standard of care deviation opinions, as against Dr. McBryan, were limited solely to Dr. McBryan's professional involvement with Mr. Volutza on Monday, January 20, 2003. The fact that this jury, by the court's own recognition, both during the trial and again in the post-trial hearing, "could have" been influenced by other legally insufficient theories requires a complete new trial as to all defendants.

(9) This court erred and abused its discretion in allowing plaintiff's expert, Dr. Machac, on direct examination, to declare the American Heart Association guidelines on the management of unstable angina to be authoritative. The court also erred and abused its discretion in allowing plaintiff's expert, Dr. Machac, on direct examination, to testify regarding the AHA guidelines on the management of unstable angina, and to refer to same on power-point, since this testimony constituted inadmissible hearsay and/or the improper use of a learned treatise during the direct examination of an expert witness. This testimony was unduly prejudicial to the healthcare providers, since the AHA guidelines improperly became the focus of the case, in contravention of all pertinent legal authority, thereby warranting the grant of a complete new trial as to all defendants.

498

(10) This court erred and abused its discretion in prohibiting defense counsel's cross-examination of plaintiff's expert, Dr. Machac, with respect to the central issue in the case. Plaintiff made the issue, as to whether a primary care physician should be responsible for an unforeseen outcome in a patient who presents with non-specific complaints, the central issue in the case. This court's limitation on defendant's cross-examination of plaintiff's expert witness, on this issue, was unduly prejudicial and harmful to defendant's case, thereby warranting the grant of a complete new trial as to all defendants.

(11) This court erred and abused its discretion in refusing to grant a new trial, since Dr. Machac was not qualified to render expert testimony on the standard of care issue. This court erred and abused its discretion in permitting Dr. Machac to testify as an expert witness against Dr. McBryan, since it was never established, as required by 40 P.S. §1303.512, that Dr. Machac practiced in the same subspecialty as Dr. McBryan or in a subspecialty which has a substantially similar standard of care for the specific care at issue. Moreover, it was never established that Dr. Machac, a practicing clinical cardiologist, was actively involved in the full-time teaching of medicine in the applicable subspecialty of primary care medicine or a related field of medicine. As such, since Dr. Machac was not qualified to render [expert] testimony against Dr. McBryan on the standard of care issue and since expert testimony was required, a complete new trial as to all defendants is necessary.

(12) The trial court erred and abused its discretion in denying defendants' motions for post-trial relief, and in

molding the verdict adding damages for delay, through its order dated December 17, 2009.

(13) The trial court erred and abused its discretion by allowing judgment to be entered on the jury's verdict (on January 7, 2010), particularly since the jury's verdict must be set aside.

To begin, it is well-established that issues not raised in post-trial motions are waived for purposes of appeal. *Diener Brick Co. v. Mastro Masonry Contractor,* 885 A.2d 1034, 1038 (Pa. Super. 2005). In order to preserve an issue for appeal, a party must have raised that issue previously in its post-trial motions, and the mention of a newly claimed error, once a case is on appeal, does not remedy its previous omission from post-trial motions. *Id.* at 1039. This edict stems from Pa.R.C.P. 227.1, the purpose of which is to ensure that a trial court has opportunity to correct errors in its ruling, and avert the need for appellate review. *Siculietano v. K & B Amusements Corp.,* 915 A.2d 130, 132 (Pa. Super. 2006).

The February 18, 2009 motions of defendants McBryan and Berks Internal Medicine for post-trial relief raised only *some* of the issues raised in this present appeal, and those not previously raised have been waived. Specifically, in their motions for post-trial relief, the moving defendants argued that:

(1) The jury's verdict rendered solely as against Dr. McBryan with no liability being attached to co-defendants, Drs. Hey and Winn, represents an inconsistent verdict that was contrary to the undisputed evidence thereby entitling Dr. McBryan to a new trial as a matter of law.

500

(2) The court committed an error of law entitling Dr. McBryan to a new trial when the court repeatedly refused to instruct the jury that Dr. McBryan, as the referring physician, had no duty to call for, or otherwise access, ordered test results.

(3) The court committed an error of law in allowing plaintiff's expert, on direct examination, to declare the American Heart Association guidelines on the management of unstable angina as being authoritative, over the defense's objections of improper use of learned treatises and hearsay.

(4) The court committed an error of law in prejudicially restricting defense counsel's ability to cross-examine plaintiff's expert as to the critical issue in the case.

(5) The court committed error by denying the defense's motion in limine and trial objections to exclude Dr. Machac's expert testimony as against Dr. McBryan.

In a sixth reason listed in their motion for post-trial relief, the moving defendants also made a "reservation of rights to pursue further matters of repeatable error" to submit additional points of error once the trial transcript was completed and in their possession.

In comparing the moving defendants' post-trial motions with the same parties' errors complained of on appeal, it is this court's belief that the errors numbered 1, 2, 5, 6, 7, and 8 were not before this court in post-trial motions. As such, this court only briefly addresses its reasoning pertaining to the issues not raised in post-trial motions, and more fully addresses the errors complained of on appeal which were previously raised in post-trial motions. Additionally, several of the errors

complained of on appeal are duplicative, and so for purposes of judicial economy, this court has consolidated those errors in discussion below.

## Error 1

The first error complained of on appeal was not raised in post-trial motions. In brief, however, this court found the moving defendants were not entitled to a partial nonsuit or directed verdict, and that, as described below at "Error 4," this issue arose in such a cursory manner in trial that to further highlight it would have resulted in prejudice to plaintiff. This court further found that there was sufficient evidence presented to support the verdict rendered by the jury. Therefore, this court believes this error complained of on appeal to be both waived and without merit.

## Error 2

The second error complained of on appeal was not raised in post-trial motions. In brief, however, this court found that the verdict was not against the overwhelming weight of the evidence, and to the contrary, there was ample evidence presented to support the verdict rendered by the jury. The record clearly demonstrates the jury's verdict, as is further discussed below. Therefore, this court believes this error complained of on appeal to be both waived and without merit.

## Error 3

The third error complained of on appeal pertains to the verdict rendered against defendant McBryan, with

no liability against defendant Hey and defendant Winn. The distribution of liability in the jury's verdict was not contrary to the evidence presented. The responsibilities and respective specialties of all three doctor defendants were clearly laid out for the jury to consider, including the responsibility of a primary care physician, defendant McBryan, to evaluate incoming patients. As shown at trial, each of the three doctor defendants carried different duties of care toward the decedent. The duties of care did not necessarily overlap, based upon the very different function each defendant held during the week of January 20, 2003, such that it was within the purview of the jury to ascribe liability to defendant McBryan alone.

The verdict of negligence against moving defendants was well-supported by the evidence presented, and could very well have stemmed solely from decedent's January 20, 2003 visit to Berks Internal Medicine. The plaintiff presented ample evidence that defendant McBryan had opportunity to detect or at least suspect the decedent's heart attack, based upon the collective indications of symptoms presented, family history, age, weight, and the EKG reading at the time of the first medical exam. The failure to order blood work at that time also could have contributed to the negligence the jury found. It is the province of the jury to decide the case on the facts and the law and because there is evidence to support the verdict, the verdict should not be disturbed. This court does not believe it committed any error of discretion in failing to grant a new trial on this basis, nor does it believe a new trial was merited on this or any other basis.

*Error 4*

The fourth error complained of on appeal relates to this court's decision not to give the jury a special instruction that defendant McBryan did not have an obligation to actively seek out the stress test results. This issue stems from a comment by plaintiff during direct examination. Trial tr. vol. 1, 722, January 29, 2009. At that particular point in trial, plaintiff's counsel asked plaintiff whether, at the Hospital, and immediately after decedent's death, she had any discussion with defendant McBryan about the stress test results. *Id.* Plaintiff answered the question in the affirmative, and related that while speaking to defendant McBryan at the Hospital, the plaintiff asked defendant McBryan why he had not looked up the stress test results. *Id.* According to plaintiff, defendant McBryan responded that he could have looked at the stress test results sooner. *Id.*

This piece of plaintiff's testimony was not important enough, in the context of the entire two-week trial, to underline in a separate jury instruction, nor was it likely that the jury would interpret this testimony as that of an expert stating a standard of care. Plaintiff's counsel did not even incorporate this particular contention into plaintiff's own closing argument. Further, it is worth noting that the wording of plaintiff's testimony here at issue did not actually assign a "duty" on the part of the moving defendants to actively seek out the test results, nor did moving defendants object to this testimony during the direct examination. Trial tr. vol. 1, 722, January 29, 2009. Additionally, moving defendants had ample opportunity to cross-examine plaintiff on this same point, and to

present defendant McBryan's version of the same conversation.

This court found it had no obligation to address this brief testimony by plaintiff in jury instructions, and in fact would have been more prejudicial in doing so. To highlight this brief comment by the plaintiff, an obviously non-expert witness, regarding a conversation between herself and one of the defendants, would have been improper. It also would be difficult, over the course of a two-week trial, for the court to instruct the jury members on every piece of testimony they were not to consider on the final day of trial. The court clearly does not have a duty to so instruct.

Overall, this court believes it fashioned a jury charge that was fair to all parties to the case. A trial court's jury charge is considered in its entirety, when evaluated on appeal. *Rettger v. UPMC Shadyside,* 991 A.2d 915, 931 (Pa. Super. 2010). This court believes that its charge as a whole to the jury was fair and impartial in its entirety to all parties involved. Additionally, a trial court has substantial leeway in fashioning its charge to the jury, and may select its own language while remaining cognizant of the need to adequately instruct the jury on the law as it applies to the evidence adduced at trial. *Id.* This court had no duty to use the exact jury charge proposed by the moving defendants. This court did nonetheless include jury instructions which reminded the jury of the limits on the liability that could be ascribed to the moving defendants. Trial tr. vol. 2, 945, Feburary 6, 2009. Clearly on the whole, the court's charge was a correct statement of the law of the case. The decision not to instruct the

jury on this point raised by moving defendants was within both the law and this court's discretion, and does not merit a new trial.

## *Error 5*

The fifth error complained of on appeal is largely duplicative of Error 7, and was not raised in post-trial motions. In brief, however, this court found that its jury instruction was sufficient as to standard of care and the professional standards to which the defendants, as professionals, would be held. Moving defendants' submitted point for charge conveyed the same overall meaning as did this court's instruction, and there was no reason to duplicate a jury instruction which was already covered by the court in the charge. Therefore, this court believes this error complained of on appeal to be both waived and without merit.

## *Error 6*

The sixth error complained of on appeal was not raised in post-trial motions. In brief, however, co-defendant's counsel's argument on post-trial motions, positing that defendant McBryan's liability might be based on the events of Friday, January 24, 2003, had no impact on whether the record before the jury could enable the jurors to reach a verdict not against the weight of the evidence. Co-defendant's counsel's comment was after trial, and had no effect on the jury's verdict. Furthermore, there was ample evidence for the jury to reach the verdict at which it arrived, and it should not be disturbed. Therefore, this court believes this error complained of on appeal to be both waived and without merit.

## *Error 7*

The seventh error complained of on appeal was not raised in post-trial motions, and is duplicative of the jury instructions this court purportedly failed to give, mentioned at Error 5. In brief, however, this court did not find it to be an abuse of its discretion to choose a different format for jury instruction other than the particular one presented by counsel for moving defendants. This court's jury instructions, on the whole, largely had the same effect as that sought by moving defendants. Additionally, the charge itself, taken as a whole, was a correct statement of the law, and was not reversible error. Therefore, this court believes this error complained of on appeal to be both waived and without merit.

## *Error 8*

The eighth error complained of on appeal was not raised in post-trial motions, and is duplicative of Error 5 and Error 7. In brief, however, this court did not find it to be an abuse of its discretion to instruct the jury in a manner different than that specifically sought by moving defendants. This court's instructions in complete form were fair to all parties, and did not constitute reversible error. Therefore, this court believes this error complained of on appeal to be both waived and without merit.

## *Error 9*

The ninth error complained of on appeal addresses the allowance of the American Heart Association guidelines as authoritative during trial. This court permitted the use of the AHA guidelines during trial after finding the AHA

guidelines to qualify as an authoritative treatise, and after issuing limiting instructions to plaintiff's counsel as to the manner in which plaintiff's expert witness could make use of those guidelines. This court believes the manner in which it allowed the use of this treatise was appropriate and permissible under state law.

Pennsylvania courts allow an expert witness the limited use of textual material on direct examination to explain the basis for that expert's reasoning. *Aldridge v. Edmunds,* 561 Pa. 323, 750 A.2d 292 (2000). In *Aldridge,* at the trial court level, defense counsel examined their expert witness at trial through the use of textbooks on pediatrics. In its review of the use of the textbooks at trial, the Pennsylvania Supreme Court clarified its position on the use of learned treatises at trial, generally. *Id.,* 561 Pa. at 334, 750 A.2d at 298. There, the Supreme Court held that although some published materials could be considered hearsay, an expert witness could nonetheless rely thereupon in the formation of that expert's opinion, and it would be unreasonable to entirely restrain an expert witness altogether from any use of a learned treatise. *Id.* at 333-34, 750 A.2d at 297-98. The Supreme Court did, however, direct that trial courts should exercise caution and issue limiting instructions in allowing the use of learned treatises, to ensure that the learned treatise itself did not become the focus of the examination and supersede the expert's own testimony. *Id.* See also, *Arnoldy v. Forklift L.P.,* 927 A.2d 257 (Pa. Super. 2007) (overruled on other grounds), *Burton-Lister v. Siegel, Sivitz and Lebed Associates,* 798 A.2d 231, 238 (Pa. Super. 2002). This court believes the use of the AHA

guidelines at trial in this case was in compliance with *Aldridge* and its progeny.

At trial, the use of the AHA guidelines was a subject of extensive discussion with counsel. This court held lengthy discussion about this issue on the record at sidebar and in the retiring room, where all parties had an opportunity to argue whether the AHA guidelines were authoritative and whether plaintiff's expert, cardiologist Josef Machac M.D., could use them on direct examination. Trial tr. vol. 1, beginning at 13, January 26, 2009. This court considered the evidence and case law presented by all parties' counsel, and made the decision to allow the use of the AHA guidelines. Following discussion, and the decision to allow a limited use of the AHA guidelines, this court allowed for all counsel to eliminate those slides from plaintiff's expert witness' presentation which they found objectionable. The slides did not become, as moving defendants have alleged, "the focus" of the case, or even of expert Machac's testimony. The AHA guidelines were only one portion of that expert's testimony, which also included EKG readings and anatomical and physiological diagrams of the heart, and the expert's own experience as a cardiologist for his expert opinion as to the detectability of the heart attack. It was the events of the week of January 20, 2003, the death of the decedent, the testimony of the defendants, and the testimony of all experts which remained the true focus of the case.

While expert Machac said the AHA guidelines were authoritative, defendant McBryan also said he was familiar with them, and answered all questions put to him

about them. Further, while the testimony that the AHA guidelines were authoritative was not in moving defendants' favor, moving defendants had ample opportunity to present, and did present, sources and authorities that represented a different view than that of the AHA, and which was in moving defendants' favor so as to build their defense. This court's decision to allow testimony as to the AHA guidelines testimony was not unduly prejudicial. Rather, it was supported by case law, allowed permissible testimony, within this court's discretion, and certainly does not merit a new trial.

## *Error 10*

The tenth error complained of on appeal addresses this court's ruling on an objection during moving defendants' cross-examination of expert Machac. Moving defendants claim that this court's limitation on moving defendants' cross-examination was prejudicial and unduly harmful to their case. This court believes its ruling at that point in trial to have been appropriate, and non-prejudicial to moving defendants.

The portion of trial to which moving defendants presumably refer is the moment at which moving defendants' trial counsel questioned expert Machac on how a primary care physician might treat a patient presenting with a headache. Trial tr. vol. 1, 314-16, January 27, 2009. At this moment, plaintiff's counsel objected, stating that the case was "not about a headache in a doctor's office," and this court directed moving defendants' counsel to lead to a point. *Id.* Moving defendants' trial counsel continued the line of questioning, asking expert Machac how com-

mon a primary care physician would find (patients') complaint of a headache, and whether a doctor could

"make an assessment and say, well, probably fatigue, it might be a migraine, it might be a stress headache; all within keeping within the standard of care, that patient it could be your patient, walks out the door and blows an aneurism in the brain and dies instantly . . . (and whether that primary care physician would be) guilty for not sending the patient to . . . . "*Id.*

Plaintiff's counsel began to object anew, and this court sustained the objection. *Id.*

It is worth addressing the manner in which moving defendants characterize this particular line of questioning. This court disagrees that it limited the questioning on "the central issue" in the case, that the decedent's death was necessarily an "unforeseen outcome" of "non-specific complaints," or that moving defendants' trial counsel's line of questioning was a fair hypothetical analogy to the facts of the case. Instead, the particular line of questioning was inflammatory, irrelevant, and misleading to the jury. It certainly is in the trial court's discretion to disallow such misleading cross-examination. It was inaccurate to analogize one non-specific symptom to the multitude of symptoms with which decedent presented on January 20, 2003, as well as the decedent's own medical history, and that of his family. This court limited heard, sustained and overruled objections equally with respect to all parties when appropriate throughout trial, and was well within its discretion to limit this particular line of questioning.

## Error 11

In their eleventh error complained of on appeal, moving defendants cite to 40 P.S. §1303.512, generally, and claim that this court erred in allowing expert Machac's expert witness testimony. Moving defendants appeal this court's decision to allow expert Machac's testimony because they claim it was precluded under the cited statute, and because expert Machac did not regularly practice as a primary care specialist. This court considers its ruling appropriate and expert Machac's qualifications to have been more than adequate to allow his testimony.

This court's ruling was in keeping with Pennsylvania statutory and case law on medical expert witnesses. The standard for qualifying an expert witness who testifies in a medical professional liability case is partly controlled by 40 P.S. §1303.512, entitled simply "Expert qualifications." This statute directs, at subsection (a) that

"(n)o person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable." 40 P.S. §1303.512(a).

It continues on that

"(a) court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience, and knowledge to provide the testimony as a result of active involvement

in, or full-time teaching of, medicine in the applicable subspecialty or a related field of medicine within the previous five-year period." 40 P.S. §1303.512(e).

Although an earlier subsection of 40 P.S. §1303.512 directs in part that an expert testifying as to a physician's standard of care must practice in the same subspecialty as the defendant physician, it is this last subsection at (e) which the court found operative in its ruling. Expert Machac demonstrated his qualifications to be, among others, that of a physician in internal medicine, or internist, a cardiologist, and a nuclear medicine physician. Trial tr. vol. 1, 98, January 26, 2009.

By expert Machac's testimony while under cross-examination as to his qualifications, expert Machac stated that he saw not only cardiological problems in his patients, but a great number of other internal medicine problems, as well. Trial tr. vol. 1, 115, January 26, 2009. Expert Machac continued on to demonstrate the necessity of his ability to diagnose and evaluate those other internal medicine problems because of their possible impact on a given patient's cardiovascular health, as well as overall health. *Id.* Moving defendants' trial counsel then objected to expert Machac's testifying as an expert in the primary care setting, an objection which this court overruled because of the expert's work in internal medicine generally. Trial tr. vol. 1, 119-121, January 26, 2009.

This court's ruling is in keeping with a number of cases where there was a similar concern over a trial expert's qualifications. For example, in the case of *Gbur v. Golio,* a radiation oncologist was deemed qualified as an expert witness in a case against a physician urologist.

*Gbur v. Golio,* 932 A.2d 203 (Pa. Super. 2007). The radiation oncologist was permitted to testify as to the standard of care and breach thereof by the urologist who failed to adequately diagnose and treat a patient's prostate cancer which metastasized to the jaw. *Id.* at 205-206. The Superior Court there held that the oncologist's qualifications included significant contact with urologists, that the oncologist had treated patients with prostate cancer, and that his testimony did not relate to the substantive field of urology, but to the physician's failure to properly diagnose and treat the cancer. *Id.* at 207-208.

Similarly, in the case here, this court allowed the testimony of expert Machac, a physician in internal medicine, or internist, a cardiologist, and a nuclear medicine physician while defendant McBryan was presented as a primary care physician. Further, expert Machac demonstrated that he regularly treated patients with internal medicine problems other than those cardiological, and his testimony with respect to defendant McBryan largely concerned the latter's failure to diagnose the decedent's heart attack.

As such, this court believes it did not commit error or abuse its discretion in its ruling, and that its allowance of expert Machac's testimony was proper.

## Error 12

In their twelfth error complained of on appeal, moving defendants claim that this court erred and abused its discretion in denying defendants' motions for post-trial relief and in awarding delay damages, a contention which goes to post-trial matters. This court's reasoning in denying the moving defendants' motions for post-trial relief

is explained herein, above. As this court has explained above, it believes its decision to deny moving defendants' post-trial motions were sound, as the reasons behind those motions were unsupported, and the trial proceeded in accordance with Pennsylvania law.

As to the delay damages, which were unopposed by moving defendants in their post-trial motions, this court awarded the delay damages in keeping with Pa.R.C.P. 238. That rule, entitled "Damages for delay in actions for bodily injury, death or property damage," directs, in relevant part, that when a plaintiff requests monetary relief for death, damages for delay shall be added to the amount of compensatory damages, and shall become part of the verdict. Pa.R.C.P. 238(a)(1). The court followed the wording of this rule in calculating the delay damages, and in apportioning the delay damages between the wrongful death and survival actions in the same proportion as those actions were represented in the jury verdict, as shown in its December 19, 2009 order. Further, upon request by moving defendants, and again in keeping with Pennsylvania law, this court has also granted the moving defendants' emergency post-trial motion to stay execution on the judgment, and to reduce the amount of appellate security. This court does not believe it erred or abused its discretion in its treatment of the delay damages here, and acted appropriately with respect to same.

### Error 13

As to moving defendants' thirteenth and final error complained of on appeal, moving defendants allege that

this court erred and abused its discretion in allowing the judgment to be entered on the jury's verdict because the jury's verdict must be set aside, a contention which goes in part to post-trial matters. This court's reasoning for believing the jury's verdict to have been sound is explained herein, above. This court does not believe there is merit to moving defendants' claim that the jury verdict was without sufficient evidentiary support, nor that this court committed an abuse of discretion that would either require the jury verdict to be set aside, or would have precluded this court from entering judgment based on same to be entered in the first place.

Further, the entry of judgment was proper and in keeping with Pa.R.C.P. 227.4 That rule, entitled "Entry of judgment upon praecipe of a party," directs that the prothonotary shall enter judgment upon praecipe of a party when a court grants or denies relief but does not itself enter judgment or order the prothonotary to do so. Pa.R.C.P. 227.4(2). Accordingly, on January 7, 2010, the prothonotary of this court entered judgment on the verdict upon praecipe of plaintiff, and pursuant to Rule 236 of the Supreme Court of Pennsylvania. This court believes there was no error or abuse of discretion in allowing judgment to be entered on the jury's verdict, nor should the verdict be set aside.

In conclusion, because this court believes moving defendants' arguments above to be without merit, this court believes that the new trial which moving defendants claim is necessary throughout their errors complained of on appeal, is neither appropriate nor warranted. A new trial is merited only when the verdict is against the weight

of the evidence, such that the verdict is so contrary to the evidence presented that the trial's outcome shocks the conscience. This court firmly believes there was more than ample evidence presented upon which the jury could base the verdict it reached, and the verdict should not be disturbed. Finally, there were no errors of law in the rulings or the charge of the court that would merit a new trial.

For the above stated reasons, this court respectfully recommends that the instant appeal be denied.

The prothonotary shall forward the remainder of the file to the Superior Court.