J-A11021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EDWARD FLEISCH AS THE ADMINISTRATOR OF THE ESTATE OF LOUISE H. FLEISCH, AND EDWARD FLEISCH, INDIVIDUALLY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MYLES J. MARCHOVITCH AND TOLL BROTHERS, INC., | |
| Appellees | No. 844 EDA 2014 |

Appeal from the Judgment Entered May 12, 2014
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2008-05191-32-2

| | |
|---|---|
| EDWARD FLEISCH AS THE ADMINISTRATOR OF THE ESTATE OF LOUISE H. FLEISCH, AND EDWARD FLEISCH, INDIVIDUALLY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MYLES J. MARCHOVITCH AND TOLL BROTHERS, INC., | |
| APPEAL OF:  TOLL BROTHERS, INC. | No. 955 EDA 2014 |

Appeal from the Judgment Entered May 12, 2014
In the Court of Common Pleas of Bucks County
Civil Division at No. 0805191-32-2

J-A11021-15

LOUISE FLEISCH AND EDWARD
FLEISCH, INDIVIDUALLY, H/W

IN THE SUPERIOR COURT OF
PENNSYLVANIA

v.

MYLES J. MARCHOVITCH AND TOLL
BROTHERS, INC.,

APPEAL OF: MYLES J. MARCHOVITCH

No. 1052 EDA 2014

Appeal from the Judgment Entered May 12, 2014
In the Court of Common Pleas of Bucks County
Civil Division at No. 2008-05191

BEFORE: FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

MEMORANDUM BY OLSON, J.: **FILED NOVEMBER 20, 2015**

In these three consolidated appeals, Appellant, Edward Fleisch, as the administrator of the Estate of Louise H. Fleisch, and Edward Fleisch, individually (hereinafter "Plaintiffs"), cross-appellant, Toll Brothers, Inc. (hereinafter "Defendant Toll Brothers"), and cross-appellant, Myles J. Marchovitch (hereinafter "Defendant Marchovitch"), appeal from the judgment entered on May 12, 2014. We affirm.

The trial court has ably explained the underlying facts and procedural posture of this case. We quote, in part, from the trial court's opinion:

> [The testimony during the September 2013 jury trial was as follows]. On February 29, 2008, [Defendant Marchovitch's] vehicle collided with a vehicle driven by Louise [H.] Fleisch [(hereinafter "Mrs. Fleisch"),] at the intersection of Almshouse Road and Meetinghouse Road in Jamison, Pennsylvania. [Defendant] Marchovitch made a left-hand turn in front of [Mrs.] Fleisch's vehicle, causing her vehicle to travel onto the curb and run into a pole. [Mrs.] Fleisch's husband, Edward Fleisch [(hereinafter "Mr. Fleisch")],

- 2 -

arrived at the scene shortly thereafter and transported [Mrs.] Fleisch to Doylestown Hospital. At Doylestown Hospital, [Mrs.] Fleisch was told she suffered a fractured humerus. She was given pain medication and a sling to stabilize the arm, and was discharged from the hospital that day. [Mrs.] Fleisch had several appointments with orthopedic specialists in an attempt to fix the fractured humerus in the weeks following the accident.

[Mrs.] Fleisch saw Dr. Robert Takei, an orthopedic surgeon, in April[] 2008, to discuss the treatment available for her arm. Dr. Takei recommended surgery because of the persistent arm pain, along with the lack of skeletal healing. Dr. Takei testified that the surgery was "strongly necessary" because she sustained a broken humerus that had failed to heal by non-surgical treatments. Two years earlier, [Mrs.] Fleisch had an invasive surgery in which a titanium rod was placed in her left humerus. As a result of this prior surgery, the new injury had grown increasingly complex, and required a plate and screw fixation, along with cable grafting.

Prior to surgery, a medical clearance examination was conducted on [Mrs.] Fleisch by Dr. Takei and her primary care physician, and she was cleared for surgery. Dr. Takei performed [an open reduction internal fixation] surgery on [Mrs.] Fleisch['s humerus] on May 19, 2008[,] at Abington Memorial Hospital. This surgery required placing [Mrs.] Fleisch on her side[] and making an incision almost the entire length of the upper back arm. There was significant scar tissue that required removal during the surgery, and Dr. Takei stabilized the area by securing the previous plate to the upper part of the bone. This surgery lasted approximately [three-and-a-half] to four hours. The morning following surgery, [Mrs.] Fleisch reported to Dr. Takei that she was in pain. Shortly after 1:00 p.m. on May 20, 2008 [(or, approximately 18 hours after Mrs. Fleisch's surgery), Mrs.] Fleisch suffered a stroke.

Within an hour of suffering [the] stroke, [Mrs.] Fleisch had brain surgery to reduce the clot in her brain. Following this surgery, a doctor informed [Mr.] Fleisch that the blood clot remained, and that the family should begin making arrangements for [Mrs.] Fleisch's funeral. A mock funeral

- 3 -

was held in Doylestown Hospital for [Mrs.] Fleisch, and family members came into her room to say goodbye. [Mrs.] Fleisch remained in the Intensive Care Unit until May 28, 2008. On May 28, 2008[,] she was transferred to hospice care in Abington, Pennsylvania. [Mrs.] Fleisch died on June 7, 2008 at the age of [59].

[Mrs.] Fleisch was survived by her husband [and her] three adult sons. Matthew Fleisch [(hereinafter "Matthew" or "Matthew Fleisch")] was [42] years old at the time of trial, and testified that[, prior to the accident,] he saw [his mother] at least once a week. Matthew [] testified that [Mrs. Fleisch] provided guidance with his parenting, and she watched his children on average from ten to [20] hours per week. Matthew went over to his mother's house for dinner on Sundays with the entire family. . . .

Joseph Fleisch [(hereinafter "Joseph" or "Joseph Fleisch"),] the second oldest son, was [39] years old at the time of trial. At the time of [Mrs.] Fleisch's accident, Joseph was temporarily living with his parents. While [Mrs. Fleisch] was still alive, Joseph had two children, and [Mrs. Fleisch] would watch the children for Joseph while he and his wife were at work. . . .

Timothy Fleisch [(hereinafter "Timothy" or "Timothy Fleisch")] was [26] years old at the time of trial, and still lived with his father, [Mr.] Fleisch. Timothy was [21 years old] when his mother died, and lived with his mother and father at the time of [Mrs. Fleisch's] death. He testified that his mother [] took care of his cooking, cleaning[,] and laundry. Financially, Timothy did not pay any bills, and was supported by his mother and father. . . .

Prior to her death . . . , [Mrs.] Fleisch and her husband, [Mr.] Fleisch, commenced a personal injury lawsuit against [Defendant] Marchovitch in the Bucks County Court of Common Pleas, alleging claims of negligence and loss of consortium. . . .

After [Mrs.] Fleisch's death on June 7, 2008, an amended complaint was filed on September 23, 2008. ["]Edward Fleisch, individually and as the Administrator of the Estate of Louise Fleisch,["] [were named] as [the plaintiffs in the

- 4 -

suit,] and Encompass Insurance Company, the insurer of [Defendant] Marchovitch, was added as a defendant.

On November 12, 2008, Plaintiffs filed a second amended complaint, adding a wrongful death claim [to the negligence and loss of consortium claims]. . . .

On December 16, 2008, Plaintiffs filed a third amended complaint. In the third amended complaint, Plaintiffs joined [Defendant] Toll Brothers as a defendant and added a claim [of] negligent entrustment against [Defendant] Toll Brothers. . . .

On January 23, 2009, Plaintiffs filed a fourth amended complaint, adding a claim of negligence through agency against [Defendant] Toll Brothers.

Trial Court Opinion, 7/1/14, at 2-5 (some internal footnotes, capitalization, and citations omitted).

On April 6, 2009, Plaintiffs executed the following release:

[Mr. Fleisch,] as administrator of the Estate of Louise E. [sic] Fleisch, and in his own right, for and in consideration of this payment to me of [$250,000.00] the receipt and sufficiency of which are hereby acknowledged, by this Release do, on behalf of myself/ourselves individually, my/our heirs, executors, administrators and assigns hereby remise, release and forever discharge [Defendant Marchovitch], his heirs, executors, administrators and assigns, including his insurance carrier Encompass Insurance Company (the persons and entities released hereinafter being referred to individually and collectively as the "Releasees") from any and all claims, demands, liabilities, actions, causes of action and suits of any kind of nature whatsoever, including but not limited to claims for contribution or indemnity and to all claims for losses, damages, injuries and death or property damage, known or unknown which may have resulted or may result in the future from the accident which occurred on or about 29th day of February, 2008. . . . Without limiting the foregoing, it is expressly understood that the Releasees are released from all liability direct, secondary, vicarious or otherwise for

the acts or omissions of any and all other alleged tortfeasors.

. . .

. . . I reserve all claims against any and every other person, association or corporation as a result of the occurrence mentioned above. . . .

. . .

. . . It is my intention that this Release be complete and shall cover all the aforesaid claims, damages and injuries; that it shall not be subject to any claim or mistake of fact; that it expresses a Full and Complete Settlement of liability claimed and denied; and that regardless of the adequacy or inadequacy of the amount paid, it is intended to avoid litigation and to be final and complete.

I further agree that (1) I have read this Release, and that there is absolutely no agreement or reservation other than as clearly expressed herein; and (2) the consideration stated herein is all that I am ever to receive from or on behalf of the Releasees and is received with full knowledge that it covers all possible claims that could be presented against the Releasees by me or by any other person or party as a consequence of the above described accident.

Joint Tortfeasor Release (hereinafter "the Release"), 4/6/09, at 1-2.

The Release was signed by "Edward Fleisch" and by "Edward Fleisch Administrator of the Estate of Louise Fleisch." *Id.* at 3.

On July 2, 2009, Plaintiffs filed a petition for leave of court to file a fifth amended complaint. In an order dated August 21, 2009, and entered August 25, 2009, the trial court granted Plaintiffs' petition. The trial court's order broadly declared:

AND NOW, this 21st day of August, 2009, upon consideration of Plaintiffs' Motion for leave to amend

Complaint, it is hereby ORDERED that Plaintiffs' Motion is granted and leave is given for Plaintiffs to amend their Complaint.

Trial Court Order, 8/25/09, at 1.

On August 24, 2009, Plaintiffs filed their fifth amended complaint (hereinafter "the Operative Complaint"). As was true with the previous four complaints they filed in the matter, the Operative Complaint named as the plaintiffs, "Edward Fleisch as the Administrator of the Estate of Louise H. Fleisch, and Edward Fleisch individually." Plaintiffs' Operative Complaint, 8/24/09, at Caption. The Operative Complaint raised the following claims: Count 1: Negligence (against Defendant Marchovitch); Count 2: Negligence (against Defendant Toll Brothers); Count 3: Loss of Consortium and Earnings (against both defendants); Count 4: Wrongful Death (against both defendants); Count 5: Negligent Entrustment (against Defendant Toll Brothers); and, Count 6: Survival Action (against both defendants). *Id.* at ¶¶ 1-37. All of the claims against Defendant Toll Brothers were predicated upon the averment that "[a]t the time and place [of the accident], Defendant Marchovitch was an employee of Defendant Toll Brothers[] and was acting as [its] agent" or that "Defendant Toll Brothers []negligently, carelessly and/or recklessly entrusted Defendant Marchovitch to perform the work related duties which caused [Mrs.] Fleisch to sustain serious permanent injuries and subsequently death." *Id.* at ¶¶ 10 and 28. Further, as is relevant to the current appeal, the claim for wrongful death pleaded: "[p]ursuant to 42 Pa.C.S.A. [§ 8301], Plaintiff, Edward Fleisch, individually

- 7 -

and as Administrator for the Estate of Louise Fleisch and on behalf of the beneficiaries, claims damages of wrongful death for torts to the decedent, including damages for hospital, nursing, medical, funeral and administration as well as losses for the deprivation of the decedent's services, guidance, society and comfort." *Id.* at ¶ 23.

On January 20, 2010, Defendant Toll Brothers filed a motion for summary judgment.[1] Within the motion, Defendant Toll Brothers claimed: 1) Plaintiffs had no viable claim that Defendant Toll Brothers was independently negligent, and 2) the Release barred all of Plaintiffs' claims against Defendant Toll Brothers that were premised upon Defendant Toll Brothers' vicarious liability. Defendant Toll Brothers' Motion for Summary Judgment, 1/15/10, at 1-6. On January 19, 2010, Plaintiffs filed a response to the summary judgment motion and argued that: 1) "the Estate claims are not [barred] by [the Release] because there was no court approval" of the Release; 2) "the parties to the Release did not intend [for the Release] to release Defendant Toll Brothers;" and, 3) there were genuine issues of material fact regarding Defendant Toll Brothers' independent negligence. Plaintiffs' Response, 1/19/10, at 1-20.

_____

[1] We note that the summary judgment motion was dated January 15, 2010, but not entered on the docket until January 20, 2010.

On May 13, 2010, the trial court, *per* the Honorable Jeffrey L. Finley, denied Defendant Toll Brothers' motion for summary judgment, without explaining the basis for the denial. Trial Court Order, 5/13/10, at 1.

On May 19, 2010, Defendant Marchovitch filed a "Petition to Enforce Settlement of Wrongful Death Action and Survival Action" (hereinafter "Petition to Enforce Settlement Agreement"). Within this petition, Defendant Marchovitch claimed that, under the plain terms of the Release, both Plaintiff Edward Fleisch (individually) and Plaintiff "Edward Fleisch, as administrator of the Estate of Louise [H.] Fleisch," released Defendant Marchovitch from "any and all claims, demands, liabilities, actions, causes of action and suits of any kind of nature whatsoever . . . which may have resulted or may result in the future from the [February 29, 2008] accident." **See** Defendant Marchovitch's Petition to Enforce Settlement Agreement, 5/19/10, at ¶ 4; **see also** the Release, 4/6/09, at 1-2. According to Defendant Marchovitch, since the Plaintiffs manifested their intent to be bound by the terms of the Release and since the Plaintiffs had accepted Defendant Marchovitch's $250,000.00 consideration for the Release, the Plaintiffs were bound by the terms of the Release. Defendant Marchovitch's Petition to Enforce Settlement Agreement, 5/19/10, at ¶ 16. Defendant Marchovitch claimed that, if the Release required Orphans' Court approval before it could be effective against the Estate of Louise H. Fleisch, the trial court must "enter an order requiring [Plaintiffs] to petition for approval of the settlement in the Orphans' Court." **Id.** at ¶ 18. Defendant Marchovitch requested that the

trial court order the Plaintiffs to "file a Petition for Approval of Settlement in the [Orphans' Court] . . . within [10] days of the date of [the] order." *Id.* at Proposed Order.

On April 14, 2011, Defendants Marchovitch and Toll Brothers filed a joint motion for summary judgment. The motion claimed that the Plaintiffs "failed to properly amend the caption or file suit to name the Administrator of the Estate as a party to the litigation." Defendants' Joint Motion for Summary Judgment, 4/14/11, at ¶ 18; Defendants' Memorandum in Support of Motion for Summary Judgment, 4/14/11, at 4. Moreover, the motion declared, since two years had passed since Mrs. Fleisch's death, all of Plaintiffs' claims were barred by the statute of limitations. *Id.*

The case was scheduled for trial before the Honorable Robert J. Mellon. However, on June 17, 2011, Judge Mellon entered the following order:

> upon consideration of Defendants' Motion for Partial Summary Judgment which the [trial] court treats as a Motion to Enforce the Settlement Agreement . . . it is hereby ORDERED and DECREED that the Motion is GRANTED and the release signed dismissed any and all claims against [Defendant] Marchovitch individually and any vicarious liability of [Defendant] Toll Brothers. In light of Plaintiffs having withdrawn all direct causes of action against [Defendant] Toll Brothers, no further claims exist and the [case] is DISMISSED.

Trial Court Order, 6/17/11, at 1 (some internal emphasis omitted).[2, 3]

_____

[2] From what this Court can discern after studying the voluminous record in this case, when the trial court entered its June 17, 2011 order, none of the defendants' pending motions requested summary judgment based upon the
*(Footnote Continued Next Page)*

Plaintiffs filed a timely notice of appeal and, within their brief, Plaintiffs raised the following claims to this Court:

> 1. Did the trial court err or otherwise abuse its discretion in ruling that Edward Fleisch, as administrator of the estate of Louise H. Fleisch, had the authority and ability to settle and release the estate's survivorship action without approval from the Orphans' Court, which approval was never obtained?
>
> 2. Did the trial court err or otherwise abuse its discretion in ruling that neither the "law of the case" [nor] the "coordinate jurisdiction" doctrines precluded the trial court from entering judgment in favor of the defendants given that the trial court had previously ruled that the [R]elease that plaintiff Edward Fleisch executed in favor of defendant

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

effect of the Release.  Possibly, the trial court was mistaken when it declared that it was treating the defendants' "Motion for Partial Summary Judgment . . . as a Motion to Enforce the Settlement Agreement" – and what the trial court really intended to say was that it was going to treat Defendant Marchovitch's pending "Petition to Enforce Settlement Agreement" as a "Motion for Summary Judgment."  However, it must be noted that, even if this interpretation of the order were correct, Defendant Marchovitch's "Petition to Enforce Settlement Agreement" did not request that the trial court grant him summary judgment or dismiss any of Plaintiffs' claims against him.  **See** Defendant Marchovitch's Petition to Enforce Settlement Agreement, 5/19/10, at 1-5.  Rather, Defendant Marchovitch's petition merely requested that the trial court order Plaintiffs to "file a Petition for Approval of Settlement in the [Orphans' Court] . . . within [10] days of the date of [the] order."  **Id.** at Proposed Order.  Further, Defendant Toll Brothers was not a party to Defendant Marchovitch's petition to enforce the settlement agreement.

[3] During oral argument on the then-pending pre-trial motions, Plaintiffs conceded that they did not possess any evidence that Defendant Toll Brothers was independently negligent.  Plaintiffs thus conceded that their claim against Defendant Toll Brothers was strictly one of vicarious liability. N.T. Oral Argument, 6/17/11, at 73-75.

Myles Marchovitch did not extinguish the liability of the defendants?

3. Did the trial court err or otherwise abuse its discretion in ruling that Edward Fleisch, as administrator of the estate of Louise H. Fleisch, had the authority to settle and release the individual wrongful death claims of Ms. Fleisch's three adult children beneficiaries, even though none of the adult children beneficiaries executed any release and no court approval had been obtained?

*See Fleisch v. Marchovitch*, 63 A.3d 463 (Pa. Super. 2012) (unpublished memorandum) at 7, *appeal denied*, 67 A.3d 797 (Pa. 2013).

In an unpublished memorandum, this Court concluded that the Plaintiffs' first claim entitled them to relief. In other words, we concluded that the trial court erred when it granted summary judgment to the defendants, as there was no court order that "approve[d] the release of the estate's survival action." *Id.* at 8. We held:

> the statutory law of this Commonwealth prevented [Defendant] Marchovitch from settling the survival action without court approval. When [Defendant Marchovitch] paid [the Plaintiffs $250,000.00, Defendant Marchovitch] took in exchange a release which was effective to bar any further, individual claim for damages. The release, however, had no additional effect. It was ineffective to bar a further claim on behalf of the estate of the decedent.

*Id.* at 14-15 (internal corrections omitted), *quoting Schuster v. Reeves*, 589 A.2d 731, 735 (Pa. Super. 1991).

After concluding that the trial court erred when it dismissed the Estate's survival claim, this Court vacated the trial court's order and remanded the case for further proceedings. By doing so, we expressly refused to "address the remaining issues raised by [the Plaintiffs]" – even

- 12 -

though the trial court's summary judgment order also dismissed the Plaintiffs' wrongful death claim and even though the Plaintiffs claimed on appeal that "the trial court err[ed] in ruling that Edward Fleisch, as administrator of the estate of Louise H. Fleisch, had the authority to settle and release the individual wrongful death claims of Ms. Fleisch's three adult children beneficiaries, [given that] none of the adult children beneficiaries executed any release and no court approval had been obtained." **Fleisch v. Marchovitch**, 63 A.3d 463 (Pa. Super. 2012) (unpublished memorandum) at 7 and 15, *appeal denied*, 67 A.3d 797 (Pa. 2013).

In the wake of our ruling, both defendants filed timely petitions for allowance of appeal with the Pennsylvania Supreme Court. However, on May 2, 2013, our Supreme Court denied the petitions and the record was remanded to the trial court. **See Fleisch v. Marchovitch**, 63 A.3d 463 (Pa. Super. 2012) (unpublished memorandum) at 1-16, *appeal denied*, 67 A.3d 797 (Pa. 2013).

On the eve of trial, the trial court heard oral argument on the parties' pre-trial motions. As is relevant to the current appeal, during the argument, the defendants asked the trial court: 1) to exclude the expert testimony of Dr. Takei because, the defendants claimed, Dr. Takei's expert report failed to establish a causal link between the accident and Ms. Fleisch's stroke, N.T. Pre-Trial Motions, 9/10/13, at 10; 2) to preclude the Plaintiffs' vocational expert, economist J.W. Ibex, from testifying as to the value of Mrs. Fleisch's "household services and companionship" and "advice and counseling" to her

three adult children, as such damages were part of the Plaintiffs' wrongful death action – and the Release barred the Plaintiffs' wrongful death claim, N.T. Pre-Trial Motions, 9/10/13, at 19-24; 3) to hold that "the signature of [Mr. Fleisch] on the [R]elease released the [wrongful death] claims of the [three] adult children," N.T. Pre-Trial Motions, 9/10/13, at 35; and, 4) to dismiss the entire case because, following the death of Mrs. Fleisch, Plaintiffs failed to properly substitute "Edward Fleisch as the administrator of the Estate of Louise H. Fleisch" as the named plaintiff, in place of Louise H. Fleisch (individually), and the statute of limitations had now run on the Estate's claims, N.T. Pre-Trial Motions, 9/10/13, at 41.[4]

With respect to these pre-trial motions, the trial court:  1) reserved its ruling on the "motion to preclude Dr. Takei's opinion," declaring that the defendants may renew their motion at a more appropriate time, N.T. Trial, 9/11/13, at 3; 2) declared that the defendants' "motion to exclude the testimony of the expert vocational person, [Mr.] Ibex," was dependent upon "each individual plaintiff . . . establish[ing] appropriate elements of their right to recover [and i]f they do that they have a right to their own

_____

[4] We note that, during the pleading stage of the proceedings, the defendants did not file preliminary objections to the Plaintiffs' Operative Complaint and the defendants never claimed that the Plaintiffs improperly substituted "Edward Fleisch as the administrator of the Estate of Louise H. Fleisch" for Louise H. Fleisch (individually).

individual claim," N.T. Trial, 9/11/13, at 3-4;[5] 3) denied the defendants' motion to hold that "the signature of [Mr. Fleisch] on the [R]elease released the [wrongful death] claims of the [three] adult children," N.T. Pre-Trial Motions, 9/10/13, at 35; and, 4) denied the defendants' motion to dismiss the action upon statute of limitations grounds, N.T. Trial, 9/11/13, at 5.

The parties proceeded to a five-day jury trial.[6] During the trial, the jury was presented with the above-summarized evidence. ***See supra*** at

_____

[5] With respect to the defendants' motion to exclude portions of Mr. Ibex's testimony, the trial court ruled as follows:

> The motion to exclude the testimony of the vocational person, Ibex, as I indicated, this requires that each individual plaintiff in the survival action factually has to establish appropriate elements of their right to recover. If they do that they have a right to their own individual claim.
>
> And the release previously executed with regard to the wrongful death action by the husband does not preclude the other competent adult individuals from pursuing their own claim. Again, the issue will be whether or not they can factually establish their *prima facie* case. Of course, that would make it subject to a motion for directed verdict at an appropriate point in time if they do not.

N.T. Trial, 9/11/13, at 3-4. With respect to the above, we note that, even though the trial court referred to "each individual **plaintiff** in the **survival** action," from the context in the transcript it is clear that the trial court intended to refer to the individual **beneficiaries** in the **wrongful death** action. ***See id.***

[6] Trial occurred on September 11, 13, 16, 17, and 18. The jury announced its verdict on September 19, 2013.

**2-5. Further, although Mrs. Fleisch's three adult sons testified as to the loss of services, pecuniary benefits, and society they suffered as a result of their mother's death,[7] the trial court sustained some defense objections to certain vague questions, which attempted to probe the mental suffering and grief of the adult children.[8] Specifically, the trial court sustained defense objections to questions asking the adult children: "[w]hen you heard the results of the second [doctor's] opinion [regarding Mrs. Fleisch's prognosis], can you describe what was going through your head?," N.T. Trial, 9/13/13, at 29; "[w]hen you heard the news [of Mrs. Fleisch's death], what were you thinking?," N.T. Trial, 9/13/13, at 30; "[w]hat was going through your head [when you left the hospital following Mrs. Fleisch's mock funeral]?," N.T. Trial, 9/13/13, at 42; "[h]ow were you dealing with all this news [regarding

---

[7] Contrary to the implications in Plaintiffs' brief, during trial, the adult children testified freely as to any loss of services, pecuniary benefits, and society they suffered as a result of their mother's death. We do note that, for an unspecified reason, the trial court sustained one objection on this issue. Specifically, the trial court sustained a defense objection to the following question of Matthew Fleisch: "Do you know approximately what that cost, that [summer] camp [where Mrs. Fleisch worked, and where your children went every summer for free]?" N.T. Trial, 9/13/13, at 5-6. However, immediately after the trial court sustained the objection, Plaintiffs' counsel asked Matthew: "After [Mrs. Fleisch] passed away, did your children ever go back to that camp?;" Matthew testified: "No. I couldn't afford to send them." *Id.* at 6.

[8] All three of Mrs. Fleisch's sons testified during trial: Matthew testified first, Timothy testified second, and Joseph testified last. N.T. Trial, 9/13/13, at 5-73.

the doctors' advice to place Mrs. Fleisch into hospice care] at the time?," N.T. Trial, 9/13/13, at 69; and, "[h]ow did [the decision to place Mrs. Fleisch into hospice care] affect you?," N.T. Trial, 9/13/13, at 69. Moreover, after the trial court sustained the above objections, the trial court explained to the jury: "the reason I'm sustaining the objections, the case is not about the effect on the adult children, the case is about the decedent and what she's experienced." N.T. Trial, 9/13/13, at 70.

During trial, the Plaintiffs also presented the testimony of Mrs. Fleisch's surgeon, Dr. Robert Takei, whom the Plaintiffs proffered – and the trial court accepted – both as a fact witness[9] and as an expert witness in the field of orthopedic medicine and surgery. During his testimony, Dr. Takei testified to a reasonable degree of medical certainty that Mrs. Fleisch "sustained a [perioperative] stroke post-op day one following major orthopedic surgery" – and that this stroke constituted a "complication" from the surgery. N.T. Trial, 9/16/13, at 155. Notwithstanding Dr. Takei's testimony, the defendants motioned for a compulsory non-suit at the end of the Plaintiffs' case and claimed that Dr. Takei's testimony did not establish that the surgery caused Mrs. Fleisch's stroke. N.T. Trial, 9/17/13, at 60.

_____

[9] As noted above, Dr. Takei performed the May 19, 2008, open reduction internal fixation surgery upon Mrs. Fleisch's humerus.

Finally for purposes of the current appeal, we note that, towards the end of the third day of trial, the trial court held argument on defense motions with respect to prospective Plaintiffs' witnesses. As to the upcoming testimony of Plaintiffs' vocational expert, Mr. Ibex, the trial court issued the following ruling:

> With regard to the economist, [Mr. Ibex,] let's get the direction as to what this person is testifying to.
>
> There is no wrongful death claim left in this case. The evidence presented in this case – and I had reserved ruling on the motion *in limine* with regard to the three sons – is such that it does not establish a *prima facie* case to allow them to recover under the wrongful death act a separate claim.
>
> So therefore I expect to hear no testimony with regard to any financial issues under the wrongful death claim that apply specifically to the children.

N.T. Trial, 9/16/13, at 164.

Mr. Ibex testified the following day and, consistent with the trial court's ruling, Mr. Ibex limited his testimony to issues that were relevant to the Estate's survival action. Specifically, Mr. Ibex testified as to Mrs. Fleisch's lost earnings, pension, and Social Security benefits; and, according to Mr. Ibex, the total current value of these losses was $378,787.00. N.T. Trial, 9/17/13, at 27.

Given the trial court's prior ruling on the Plaintiffs' wrongful death claim, only the Plaintiffs' survival claim went to the jury. **See**, **e.g.**, N.T. Trial, 9/17/13, at 144; N.T. Trial, 9/18/13, at 114 and 140. The jury

concluded that: Defendant Marchovitch was negligent; the negligence of Defendant Marchovitch was a factual cause in bringing about Mrs. Fleisch's fractured arm; the negligence of Defendant Marchovitch was a factual cause in bringing about Mrs. Fleisch's death; Mrs. Fleisch was not negligent; and, Mrs. Fleisch's Estate suffered $280,000.00 in damages as a result of the negligence. N.T. Trial, 9/19/13, at 2-5.

On September 27, 2013, Plaintiffs filed a post-trial motion titled "Motion to Remove Non-Suits." Within this motion, Plaintiffs claimed that the trial court erred when it dismissed their wrongful death claim. According to the Plaintiffs, the trial court "ultimately decided . . . that adult emancipated children cannot have viable wrongful death claims for the loss of a parent." Plaintiffs' Motion to Remove Non-Suit, 9/27/13, at 1-3. The Plaintiffs thus claimed that the trial court erred in its legal conclusion that "the three adult beneficiaries['] claims were not permitted because they were and are emancipated adults." The Plaintiffs requested that the trial court award them a new trial on their wrongful death claim. *Id.*

Both of the defendants filed timely post-trial motions on October 7, 2013 and, within both of their motions, the defendants claimed that the trial court erred: when it denied their motion *in limine* to preclude Dr. Takei's expert testimony; when it denied their motion to grant a non-suit on the survival action, as Dr. Takei's trial testimony did not establish that the surgery caused Mrs. Fleisch's stroke; when it denied their pre-trial motion to dismiss the wrongful death claim, as the Release barred the claim; and,

- 19 -

when it denied their motion for summary judgment, as the statute of limitations barred the survival and wrongful death claims. *See* Defendant Toll Brothers' Post-Trial Motion, 10/7/13, at 1-3; Defendant Marchovitch's Post-Trial Motion, 10/7/13, at 3-8.

The trial court denied all motions for post-trial relief in an order dated March 3, 2014 and entered March 7, 2014. The three parties then filed timely notices of appeal to this Court.

Plaintiffs raise the following claims on appeal:

> [1.] The trial court [erred when it] prohibited Plaintiffs from presenting evidence at trial relative to the wrongful death losses of the three adult beneficiaries, and now says that the wrongful death claims were properly dismissed because Plaintiffs failed to present evidence of the wrongful death losses of the three beneficiaries.

> [2.] The [trial court erred when it dismissed the wrongful death claim because] the defendants did not file or present any motion for non-suit relative to the wrongful death claims of the adult beneficiaries.

Plaintiffs' Brief at i (some internal capitalization omitted).

Defendant Toll Brothers lists the following claims in its brief to this Court:

> 1. Did the trial court err in concluding that the testimony of Dr. Robert Takei was sufficient to establish causation?

> 2. Did the trial court err in denying the motion *in limine* to preclude Dr. Robert Takei's testimony as it failed to meet the prerequisites of Pennsylvania Rule of Evidence 702 *et seq.*?

> 3. Did the trial court [err] in concluding that the [R]elease did not bar any wrongful death claims?

- 20 -

4. Did the trial court err in denying the motion for summary judgment as well as motions *in limine* that the statute of limitations barred any wrongful death claims as well as [the] survival action?

Defendant Toll Brothers' Brief at 25 (some internal capitalization omitted).

Defendant Marchovitch raises one claim on appeal:

[1.] Did the trial court err or otherwise abuse its discretion in denying [defendants'] motion for non-suit on [P]laintiffs' wrongful death claims and survival action claim for future losses based on [P]laintiffs' failure to present sufficient evidence to support a finding that there was a causal connection between the surgery performed on May 19, 2008 and the decedent's stroke and subsequent death?

Defendant Marchovitch's Brief at 30 (some internal capitalization omitted).

We will consider the Plaintiffs' claims first. Within the Plaintiffs' brief to this Court, the Plaintiffs claim that the trial court erred when it: 1) "prohibited [the] Plaintiffs from presenting evidence at trial relative to the wrongful death losses of the three adult beneficiaries" and then held that the Plaintiffs' wrongful death claim failed because the Plaintiffs failed to present evidence of such wrongful death losses, and 2) *sua sponte* dismissed their wrongful death claim because "no defendant ever moved for non-suit relative to the adult beneficiar[ies'] wrongful death claims." Plaintiffs' Brief at 13 and 21 (some internal capitalization omitted). Both of these claims are waived, as the Plaintiffs did not raise them in their post-trial motion. Indeed, the Plaintiffs raised one issue in their post-trial motion. Specifically, the Plaintiffs claimed that the trial court committed legal error when it held that "adult emancipated children cannot have viable wrongful death claims

for the loss of a parent."[10]  Plaintiffs' Motion to Remove Non-Suit, 9/27/13,

at 1; *see also* Plaintiffs' Motion to Remove Non-Suit, 9/27/13, at 2 ("the

[trial c]ourt decided the three adult beneficiaries['] claims were not

permitted because they were and are emancipated adults").   The claim

leveled in Plaintiffs' post-trial motion addressed the legal validity of the

emancipated beneficiaries' wrongful death claims, *vel non*.   Our review of

the certified record confirms that Plaintiffs never claimed in their post-trial

motion as they do on appeal:  that the trial court's evidentiary rulings were

---

[10] Within their post-trial motion, Plaintiffs' claimed that the trial court erred when it categorically held that "adult emancipated children cannot have viable wrongful death claims for the loss of a parent."  Plaintiffs' Motion to Remove Non-Suit, 9/27/13, at 1.  Although this particular claim of error was not argued within the Plaintiffs' appellate brief, we note that the record belies the claim raised in Plaintiffs' post-trial motion.  At the outset, prior to trial, the trial court specifically held that Plaintiffs could go forward with their wrongful death claim, but that the claim was dependent upon the adult beneficiaries "establish[ing] appropriate elements of their right to recover [and i]f they do that they have a right to their own individual claim."  N.T. Trial, 9/11/13, at 3-4.   Further, with the exception of **one question** regarding the cost of summer camp (*see supra* n.6), the trial court allowed each adult child to testify fully as to any pecuniary losses he suffered as a result of his mother's death.  **See** N.T. Trial, 9/13/13, at 5-73.   Finally, within the trial court's opinion to this Court, the trial court expressly recognized that, "[i]n **Gaydos v. Domabyl**, [152 A. 549 (Pa. 1930)], the [Supreme] Court held that even if a child has reached the age of majority, they may still recover damages under the Wrongful Death Act of a parent" – but that Plaintiffs' wrongful death claim failed because "[t]he testimony of Matthew Fleisch, Joseph Fleisch, and Timothy Fleisch failed to establish a *prima facie* showing of pecuniary loss of any kind."  Trial Court Opinion, 7/1/14, at 10 and 12.  Thus, even if Plaintiffs had raised, on appeal, the claim they had preserved in their post-trial motion, the claim would have failed.

erroneous; that the trial court erred when it prohibited Plaintiffs from offering evidence of the beneficiaries' pecuniary losses – and then granted a non-suit on the wrongful death claim because Plaintiffs failed to present evidence of such losses; or, that the trial court erred in *sua sponte* dismissing their wrongful death claim.[11]  As such, Plaintiffs' claims of error on appeal are waived.  Pa.R.C.P. 227.1(b) ("post-trial relief may not be granted unless the grounds therefor . . . are specified in the [post-trial] motion. . . .  Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds"); **Diener Brick Co. v. Mastro Masonry Contractor**, 885 A.2d 1034, 1038-1039 ("issues not raised in post trial motions are waived for purposes of appeal"); **Commonwealth v. Rush**, 959 A.2d 945, 949 (Pa. Super. 2008) ("for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court").

Next, we consider Defendant Toll Brothers' four appellate claims.  We summarily dispose of these claims, as they either fail or are moot.

First, Defendant Toll Brothers contends that the trial court erred when it denied its motion for a compulsory non-suit and held that the testimony of

---

[11] Moreover, Plaintiffs nowhere assert, either in their post-trial motion or in their brief on appeal, that they did, in fact, satisfy their burden of production with respect to the wrongful death claims of the beneficiaries.

Plaintiffs' expert, Dr. Takei, was sufficient to establish that the surgery caused Mrs. Fleisch's stroke.[12] This claim fails, as Dr. Takei testified that Mrs. Fleisch "sustained a [perioperative] stroke post-op day one following major orthopedic surgery" and Dr. Takei specifically testified that the stroke **constituted a "complication" from the surgery**. N.T. Trial, 9/16/13, at 155.[13] Giving Plaintiffs "all reasonable inferences arising from" this

---

[12] As we have explained:

> Our standard of review for appeals from the grant or denial of a motion for compulsory non-suit is as follows:
>
> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.
>
> A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff.

*Hoffa v. Bimes*, 954 A.2d 1241, 1243 (Pa. Super. 2008) (internal citations, quotations, and corrections omitted).

[13] Webster's New World Medical Dictionary defines the medical term "complication" as follows:

*(Footnote Continued Next Page)*

- 24 -

testimony, Dr. Takei's testimony was sufficient to establish that Mrs. Fleisch's stroke was caused by the surgery. As such, Defendant Toll Brothers' first claim on appeal fails.

Second, Defendant Toll Brothers claims that the trial court erred when it denied its motion *in limine* to preclude Dr. Takei's expert testimony. Defendant Toll Brothers claims that Dr. Takei's expert report "did not express an opinion to any reasonable degree of medical certainty that the stroke was caused by the surgery." Defendant Toll Brothers' Brief at 42-43. This claim fails because, within Dr. Takei's initial expert report, Dr. Takei opined that Mrs. Fleisch's "post-operative course was complicated by a global and catastrophic stroke, for which there was no reasonable level of recovery" and, within Dr. Takei's later-filed "physician certification," Dr. Takei supplemented his expert report by opining as follows:

> It is my opinion to a reasonable degree of medical certainty that [Mrs.] Fleisch's stroke was directly and proximately the result of her surgery and thus initially caused by the motor vehicle accident. . . . [M]y opinion was and is that the [s]troke was directly and proximately caused by the surgical procedure which was a result of the motor vehicle accident. To be clear, it is my opinion within a reasonable degree of

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> In medicine, an unanticipated problem that arises following, **and is a result of**, a procedure, treatment, or illness. A complication is so named because it complicates the situation.

Webster's New World Medical Dictionary 94 (3d ed. 2008) (emphasis added).

medical certainty, the massive stroke that occurred very shortly [after] the completion of [Mrs.] Fleisch's surgery was directly and proximately caused by the surgical procedure.

Dr. Takei's Physician Certification, dated 9/2/10, at 3.[14]

Since Dr. Takei specifically opined that Mrs. Fleisch's "stroke was directly and proximately the result of her surgery," Defendant Toll Brothers' second claim on appeal is factually baseless and thus fails. *Id.*

Third, Defendant Toll Brothers claims that the trial court erred when it concluded that the Release did not bar the Plaintiffs' wrongful death claim. This claim is moot, as the trial court dismissed the wrongful death claim and we have concluded that the Plaintiffs have waived their claims of error with respect to this issue.

Finally, Defendant Toll Brothers claims that the trial court erred when it denied the defendants' joint motion for summary judgment, wherein the defendants claimed that Plaintiffs failed to properly amend the caption to substitute "Edward Fleisch as the administrator of the Estate of Louise H. Fleisch" as the named plaintiff, in place of Louise H. Fleisch (individually), and the statute of limitations had now run on the Estate's claims. *See* Defendant Toll Brothers' Brief at 45; N.T. Pre-Trial Motions, 9/10/13, at 41.

---

[14] At the beginning of trial, the defendants moved to strike Dr. Takei's supplemental expert opinion as untimely. N.T. Pre-Trial Motions, 9/10/13, at 12. However, the trial court did not grant the defendants' motion to strike on this basis – and Defendant Toll Brothers does not claim that the trial court erred in this regard.

This claim is waived because Defendant Toll Brothers did not file preliminary objections to the Plaintiffs' complaint. *See Vetenshtein ex rel. Vetenshtein v. City of Phila.*, 755 A.2d 62, 67 (Pa. Cmwlth. 2000) ("neither obtaining leave of court [nor] obtaining the filed consent of the defendant [to file an amended complaint pursuant to Pa.R.C.P. 1033] involves a matter of jurisdiction and can be waived by failure of opposing counsel to file preliminary objections for failure of the amended complaint to conform to the rules of court").

Further, even if the claim were not waived, the claim would fail because Mrs. Fleisch was alive when she filed the original complaint in her own name and, following the death of Mrs. Fleisch, the trial court expressly granted Plaintiffs' petition for leave of court to file the Operative Complaint that was attached to the petition – and the Operative Complaint not only declared that plaintiffs were "Edward Fleisch as the administrator of the Estate of Louise H. Fleisch, and Edward Fleisch, individually," but the Operative Complaint was also filed within the applicable statutes of limitations. *See* Trial Court Order, 8/25/09, at 1; Plaintiffs' Petition to Amend Complaint, 7/2/09, at 1-2; *see also* Pa.R.C.P. 1033 ("A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or

defense. An amendment may be made to conform the pleading to the evidence offered or admitted"). Defendant Toll Brothers' final claim on appeal fails.

With respect to Defendant Marchovitch's appeal, Defendant Marchovitch repeats Defendant Toll Brothers' claim that the trial court erred when it denied the defendants' motion for non-suit because Dr. Takei's trial testimony was insufficient to "support a finding that there was a causal connection between the surgery performed on May 19, 2008 and the decedent's stroke and subsequent death." Defendant Marchovitch's Brief at 30. As explained above, this claim fails. ***See supra*** 23-25.

Judgment affirmed. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Wecht concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2015